IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

WADE H. BENNETT,            )

                    )

          Plaintiff,      )

                    )

v.                      )

                    )

CSX TRANSPORTATION, INC., a Virginia  )
corporation; CSX HOTELS, INC., d/b/a  )
THE GREENBRIER HOTEL, a West  )
Virginia corporation; THE GREENBRIER;  )
CRAIG PHILLIPS, individually and as  )
Director of Human Resources; ERIC S.  )
KORSH, M.D.; LEWIS-GALE CLINIC,  )
INC., a Virginia corporation;  )
REHABWORLD OF WEST VIRGINIA,  )
INC., a West Virginia corporation;  )
SOFAMOR/DANEK GROUP, INC., an  )
Indiana corporation; and DANEK  )
MEDICAL, INC., a Tennessee corporation,  )

                    )

          Defendants.     )

**FILED**

FEB – 1 2000

SAMUEL L. KAY, CLERK
District & Bankruptcy Court

Case No. 5:00-0086

(State Court Case No. 96-C-43)

NOTICE OF REMOVAL

    Notice is hereby given you in accordance with the provisions of 28 U.S.C. § 1446

that on the 31st day of January, 2000, Defendant Eric S. Korsh, M.D. ("Dr. Korsh"), filed

in the United States District Court for the Southern District of West Virginia, Beckley

Division, this Notice of Removal to said United States District Court.  In support thereof,

Dr. Korsh states as follows:

    1.    Plaintiff commenced this action in the Circuit Court for Greenbrier

County, West Virginia.  Copies of the Complaint, Amended Complaint, and Summons to

Dr. Korsh are attached hereto as Exhibits A, B, and C.

FLIPPIN
DENSMORE
MORSE
RUTHERFORD
& JESSEE

2.     The case stated by the initial pleading was not removable, but this case has become one of which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1331 and one which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441.

3.     On January 19, 2000, the Circuit Court for Greenbrier County ruled that an issue of fact existed as to whether a violation of federal regulations had occurred.  This ruling was the first notice to Dr. Korsh that a violation of federal law was at issue in this matter.

4.     An order has not yet been entered regarding this ruling.  However, on January 24, 2000, Dr. Korsh received a proposed order drafted by Plaintiff which stated that the Court had ruled evidence of violations of federal rules and regulations was admissible and relevant to Plaintiff's claims of product liability and medical malpractice.

5.     On January 13, 1999, Plaintiff filed his Brief in Opposition to Summary Judgment.  Therein, Plaintiff argued that federal rules and regulations indicate whether products are safe and effective for particular medical uses and that Dr. Korsh failed to obtain informed consent because he failed to inform Plaintiff of the regulatory status of the medical devices used in the treatment of Plaintiff.  This was the first notice in any pleading, motion, order or other paper that Plaintiff based his claims on the meaning and effect of federal regulations.

6.     As set forth above, this pleading has been filed within 30 days of Dr. Korsh's first notice in any pleading, motion, order or other paper that this matter had become removable.

FLIPPIN
DENSMORE
MORSE
RUTHERFORD
& JESSEE

2

7.     In the event the court determines there is no basis for jurisdiction under 28 U.S.C. § 1331, jurisdiction exists under 28 U.S.C. § 1332 over Plaintiff's claims based on his surgery in Roanoke, Virginia as these claims are improperly joined with Plaintiff's other claims.

8.     All Defendants have given their consent to this removal.

9.     A copy of this Notice of Removal will be filed with the clerk of the Circuit Court for Greenbrier County, West Virginia and served upon counsel for Plaintiff as required by 28 U.S.C. § 1446(d).

ERIC S. KORSH, M.D.

By: _____
            Of Counsel

John T. Jessee, Esq. (West Virginia Bar. No. 1885)
Flippin, Densmore, Morse, Rutherford & Jessee
Post Office Drawer 1200
Roanoke, Virginia 24006

Counsel for Eric S. Korsh, M.D.

FLIPPIN
DENSMORE
MORSE
RUTHERFORD
& JESSEE

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Notice of Removal was forwarded via Federal Express to Marvin W. Masters, Esq., Masters & Taylor, L.C., 181 Summers Street, Charleston, West Virginia 25301, counsel for plaintiff; and via U.S. Mail to Melissa G. Foster, Esq., Huddleston, Bolen, Beatty, Porter & Copen, P.O. Box 2185, Huntington, West Virginia 25722, counsel for CSX Transportation, Inc., CSX Hotels, Inc., The Greenbrier, and Craig Phillips; to George W. Wooten, Esq., Wooten & Hart, P.O. Box 12247, Roanoke, Virginia 24024-2247 and to Richard E. Ford, Jr., Esq., Haynes, Ford & Rowe, 203 West Randolph Street, Lewisburg, West Virginia 24901, counsel for Lewis-Gale Clinic, Inc.; to Debra A. Nelson, Esq., Mundy & Adkins, P.O. Box 2986, Huntington, West Virginia 25728, counsel for RehabWorld of West Virginia, Inc.; and to Diana Everett, Esq., Steptoe & Johnson, P.O. Box 628, Parkersburg, West Virginia 26102, counsel for Sofamor/Danek Group, Inc. and Danek Medical, Inc., this 31st day of January, 2000.

FLIPPIN
DENSMORE
MORSE
RUTHERFORD
& JESSEE

4



IN THE CIRCUIT COURT OF GREENBRIER COUNTY, WEST VIRGINIA


WADE H. BENNETT,

        Plaintiff,

v.                            Civil Action No. 96-C-43

CSX TRANSPORTATION, INC., a Virginia
corporation; CSX HOTELS, INC., d/b/a
THE GREENBRIER HOTEL, a West Virginia
corporation; THE GREENBRIER; CRAIG
PHILLIPS, individually and as Director
of Human Resources; ERIC S. KORSH, M.D.;
LEWIS-GALE CLINIC, INC., a Virginia
corporation; REHABWORLD OF WEST VIRGINIA,
INC., a West Virginia corporation;
SOFAMOR/DANEK GROUP, INC., an Indiana
corporation; and DANEK MEDICAL, INC.,
a Tennessee corporation,

        Defendants.


## COMPLAINT

Plaintiff complains and says as follows:

1.   Plaintiff is a resident of Greenbrier County, West Virginia and was an employee of The Greenbrier Hotel, owned by CSX Hotels, Inc., a West Virginia corporation, and/or CSX Transportation, Inc., a Virginia corporation, hereinafter collectively referred to as CSX.

2.   In 1993, plaintiff incurred an injury at work at CSX which required medical care and treatment.

3.   Lewis-Gale Clinic, Inc. and Dr. Eric S. Korsh advertised in the State of West Virginia during this period of time for patients who had problems or injuries like those of plaintiff for the purpose of attracting patients, including plaintiff, to seek treatment from Lewis-Gale, including Dr. Eric S. Korsh, an

orthopaedic surgeon, and otherwise the Clinic and Dr. Korsh had significant contacts with the State of West Virginia.

4. RehabWorld of West Virginia, Inc. is a West Virginia corporation which provides therapy to persons who have injuries like plaintiff. Craig Phillips and Lewis-Gale Clinic referred plaintiff to RehabWorld for therapy and/or work hardening.

5. Sofamor/Danek Group, Inc., an Indiana Corporation, and its wholly-owned subsidiary, Danek Medical, Inc., a Tennessee Corporation (hereinafter collectively "Sofamor/Danek"), are manufacturers and distributors of medical devices for the purpose and application of orthopaedic surgeons to utilize in orthopaedic surgery.

6. Craig Phillips is the director of human resources for CSX/Greenbrier and was involved in the management of plaintiff's employment at The Greenbrier, including workers compensation defense and other matters.

7. Craig Phillips, at all times complained of herein, was an agent, servant and employee of CSX and was acting on his own behalf and on behalf of CSX.

8. On or about March, 1994, plaintiff was operated on at Lewis-Gale Clinic and certain pedicle screws and rods, manufactured by Sofamor/Danek, were placed into your plaintiff's back, vertebrae and spine by Dr. Korsh. Dr. Korsh, at all times complained of herein, we acting as agent, servant and employee of Lewis-Gale Clinic.

2

9.   The aforesaid procedure was recommended by Lewis-Gale Clinic acting by and through its agents, servants and employees, including Dr. Eric S. Korsh, said recommendation including a representation that they were 98% successful.

10.   Dr. Korsh and Lewis-Gale Clinic were distributors of the aforesaid pedicle screws and rods for and on behalf of Sofamor/Danek and were acting in that regard as agents, servants and employees of Sofamor/Danek.   This Court has venue and jurisdiction over these defendants as they all transact business in this county and in this state.

<u>Count I</u>

11.   Defendants sold their pedicle screws and rods and placed them into the stream of commerce in an unreasonably dangerous and defective condition and were purchased by the plaintiff without any change to the product.

12.   The defendants, Dr. Korsh, Lewis-Gale Clinic and Sofamor/Danek, acting for and on behalf of each other, as agents, servants and employees, and each one of them, were negligent in the following particulars:

    a.   In manufacturing and marketing a defective and unreasonably dangerous product;

    b.   In manufacturing and marketing a product improperly designed;

    c.   In manufacturing and marketing a product without adequate testing or inspections;

d.    In manufacturing and marketing a product without adequate warnings of risks and hazards associated with use thereof;

e.    In manufacturing and marketing pedicle screws and rods which were not fit for the use intended; and

f.    In failing to exercise that degree of care and prudence that a reasonable manufacturer and distributor would exercise under the same or similar circumstances.

13.    The acts and conduct of defendants were intentionally and knowingly done and plaintiff was damaged as hereinafter alleged.

14.    As a direct and proximate result of one or more of the foregoing acts or omissions, the plaintiff suffered injuries and damages and will continue to suffer injury and damages herein alleged for which he is entitled to recover damages.

<u>Count II</u>

15.    Plaintiff hereby adopts and incorporates paragraphs 1 though 14 as if fully stated and set forth at length herein.

16.    Defendants sold and distributed their pedicle screws and rods and placed them into the stream of commerce in an unreasonably dangerous and defective condition which products were not reasonably safe for their intended use and such products were purchased by the plaintiff without any change to the products.

17.    Defendant Doctor and Clinic transferred the pedicle screws and rods, which were standardized, commercially manufactured products, which were inherently defective for their intended use, to plaintiff while providing professional services.

4

18.   The above referenced screws and rods were expected to and did in fact reach the plaintiff without substantial change in the condition, in which they were marketed and sold, and used in the fashion which the defendant manufacturer, Sofamor/Danek, and Clinic and Doctor intended them to be used.

19.   Due to the defective condition of the product, which was not reasonably safe for its intended use, plaintiff has suffered injuries and damages herein alleged and will continue to suffer injuries and damages for which he is entitled to recover damages.

Count III

20.   Plaintiff hereby adopts and incorporates paragraphs 1 through 19 as if fully stated and set forth at length herein.

21.   The defendants were/are merchants with respect to the sale and manufacture of the pedicle screws and rods.

22.   The defendant Doctor and Clinic provided professional services involving transfer of the pedicle screws and rods to the plaintiff as a part of such service.  The rods and screws were standardized, commercially manufactured products which were inherently defective and not reasonably safe for their intended use.

23.   In selling the pedicle screws and rods in question to the plaintiff, the defendants expressly and impliedly warranted to the plaintiff that the pedicle screws and rods manufactured, distributed, supplied, sold and/or delivered were merchantable, reasonably safe and fit for the ordinary purposes for which they were sold and intended.

5

24.  As a direct and proximate result of the unreasonably dangerous and defective condition of the pedicle screws and rods, the defendants have breached expressed and implied warranties of merchantability and fitness pursuant to West Virginia Code Sections 46-2-106, 46-2-313, 46-2-314 and 46-2-315.

25.  As a result of the breach of warranties, the plaintiff suffered and will continue to suffer severe, grievous and personal injury for which he is entitled to recover damages.

### Count IV

26.  Plaintiff hereby adopts and incorporates paragraphs 1 through 25 as if fully stated and set forth at length herein.

27.  The defendants have fraudulently misrepresented the quality of the products in placing them upon the market.  The representations of the safety of the products were made with reckless disregard of the truth of the safe condition of the products which was either known or should have been known by the defendants.  The representations were intended to be relied upon by the plaintiff and others and were in fact relied upon by the plaintiff and others to their detriment and damage.  As a result the plaintiff is entitled to both actual and punitive damages for the conduct of the defendants.

28.  These misrepresentations included that they were 98% successful, when that is not true.

### Count V

29.  Plaintiff hereby adopts and incorporates paragraphs 1 through 28 as if fully stated and set forth at length herein.

30.   Defendant Clinic is vicariously liable for the acts or omissions of defendant Doctor in that Clinic billed the plaintiff for services provided to plaintiff and profited from such arrangement between Doctor and Clinic and therefore should be held responsible for the damages and injuries to plaintiff by joint venture and agency.

31.   The aforesaid defendants, Clinic and Doctor, were engaged in a joint venture.

<u>Count VI</u>

32.   Plaintiff hereby adopts and incorporates paragraphs 1 through 31 as if fully stated and set forth at length herein.

33.   The defendants knew or should have known of the defective condition of the product and failed to warn your plaintiff that the pedicle screws and rods would break, deteriorate or otherwise cause serious injury upon being used in the manner and method as aforesaid; and as a proximate result, your plaintiff was injured and damaged as hereinafter alleged.

34.   That as a proximate result of the negligent, careless, intentional and wrongful acts and omissions of the defendants and each of them acting for and on behalf of themselves and each other as aforesaid, your plaintiff was caused to suffer great and permanent injury to his body, he was made sick, sore, lame, crippled and was caused to suffer great and permanent physical pain and suffering and mental anguish and will continue to suffer the same for the rest of his natural life; and as a result thereof, he

7

is permanently injured, disabled and crippled for life and, in addition, your plaintiff was damaged as follows:

a.   He incurred hospital and medical bills;

b.   He will incur future medical bills;

c.   He has lost past and future wages; and

d.   He has lost ability to enjoy life.

And your plaintiff has been otherwise damaged.

35.   The defendants knew the pedicle screws and rods were not properly designed and manufactured and that they had not been sufficiently or adequately tested when they sold them to your plaintiff, and they knew they were dangerous.

36.   The defendants knew when they sold plaintiff the pedicle screws and rods that they would break, deteriorate or cause plaintiff additional damage, but they never warned him, and defendants intentionally injured your plaintiff or were so reckless that said recklessness manifested an intention to harm plaintiff, and plaintiff is entitled to punitive damages.

<u>Count VII</u>

37.   Plaintiff hereby adopts and incorporates paragraphs 1 through 36 as if fully stated and set forth at length herein.

38.   On or about March, 1994, the defendant, Dr. Korsh, while acting individually and as an agent, servant, employee and/or apparent agent of the defendant Clinic and the Clinic acting in its own behalf, and RehabWorld, had a duty to render care in accordance with the prevailing professional standard, and further deviated

8

from the prevailing professional standard of care customarily
employed by members of his profession and specialty that they:

    a.   Failed to order and/or carry out certain diagnostic tests
and procedures which they knew or should have known were
indicated for the immediate diagnosis, care and treatment
of plaintiff;

    b.   Failed to adequately and properly diagnose the
plaintiff's condition and to order or perform the correct
procedure on plaintiff, but instead ordered and performed
an incorrect procedure, as described aforesaid, to wit:
surgical placement of the aforesaid pedicle screws and
rods;

    c.   Failed to warn plaintiff of the dangers or risks of the
operation and procedure; and

    d.   Required plaintiff to perform activities which caused
plaintiff further injury.

39.  As the direct and proximate result of the aforementioned
deviations from the prevailing professional standard of care by the
defendants, Korsh, Clinic and RehabWorld, and the acts and conduct
of Sofamor/Danek, the plaintiff has sustained permanent damage and
suffered serious and permanent injuries, and as a result of the
above deviations, has been rendered sick, sore and disabled and has
in the past suffered and will in the future suffer great pain and
anguish of body and mind, all of which are permanent in nature.

40.  As the direct and proximate result of the above
deviations from the accepted standards of care, the plaintiff has

9

in the past and will in the future incur medical bills attendant to his condition.

41.   That as the direct and proximate result of the above deviations from the accepted standards of care, the plaintiff has in the past and will in the future suffer loss of earnings and earning capacity and has been damaged as hereinafter alleged.

### Count VIII

42.   Plaintiff hereby adopts and incorporates paragraphs 1 through 41 as if fully stated and set forth at length herein.

43.   As a result of the injuries proximately caused by defendants above, plaintiff was unable to continue to perform all of his usual duties at work.

44.   Defendant Korsh, acting as agent, servant and employee of the Clinic, maliciously, intentionally and wantonly wrote a letter to defendants Phillips and CSX and stated and/or implied that plaintiff was a malingerer.

45.   The defendants CSX and Craig Phillips fired your plaintiff after receiving the aforesaid letter.

46.   The defendants, Korsh and Clinic, intentionally, maliciously and negligently interfered with your plaintiff's employment and as a proximate result, your plaintiff was terminated and was damaged as hereinafter alleged.

### Count IX

47.   Plaintiff hereby adopts and incorporates paragraphs 1 through 46 as if fully stated and set forth at length herein.

10

48.   The defendants Korsh and Clinic libeled and slandered your plaintiff and plaintiff was damaged as hereinafter alleged.

### Count X

49.   Plaintiff hereby adopts and incorporates paragraphs 1 through 48 as if fully stated and set forth at length herein.

50.   The defendant, Craig Phillips, acting individually and as agent, servant and employee of defendant CSX, intentionally, willfully and maliciously, acting in concert with defendants, Korsh and Clinic, combined and conspired to terminate your plaintiff for reasons which included that plaintiff had filed for and was prosecuting a workers compensation case for benefits thereunder.

51.   As a proximate result, your plaintiff was damaged as hereinafter alleged.

### Count XI

52.   Plaintiff hereby adopts and incorporates paragraphs 1 through 51 as if fully stated and set forth at length herein.

53.   The defendants Craig Phillips, CSX, Korsh and Clinic combined and conspired to fire plaintiff for reasons against public policy, including that he had complained about the pedicle screws and rods and that he was prosecuting a workers compensation complaint.

54.   As a proximate result, your plaintiff was damaged as hereinafter alleged.

### Count XII

55.   Plaintiff hereby adopts and incorporates paragraphs 1 through 54 as if fully stated and set forth at length herein.

11

56.  The acts and conduct of defendants were outrageous in that they offend against the generally accepted standards of decency and morality in the community.

57.  The plaintiff suffered severe emotional distress as a proximate result thereof.

58.  Plaintiff was otherwise damaged as hereinafter alleged.

<u>Count XIII</u>

59.  Plaintiff hereby adopts and incorporates paragraphs 1 through 58 as if fully stated and set forth at length herein.

60.  The acts and conduct of defendants were fraudulent and plaintiff was damaged thereby in that he was terminated from employment.

<u>Damages</u>

61.  Plaintiff hereby adopts and incorporates paragraphs 1 through 60 as if fully stated and set forth at length herein.

62.  As a proximate result of the acts and conduct of defendants, acting on their own behalf and collectively as herein alleged, your plaintiff has been damaged as follows:

a.  He has incurred and will in the future incur physical and mental pain and suffering, anguish, anxiety and severe emotional distress;

b.  He has lost income and will lose income in the future;

c.  His personal and employment reputation has been damaged;

d.  He has been humiliated and embarrassed;

e.  He has incurred medical bills and will incur medical bills in the future; and

12

f.    He has lost ability to enjoy life.

63.    The acts and conduct of defendants were intentional, reckless, willful and wanton or otherwise such that entitle plaintiff to punitive damages.

WHEREFORE, plaintiff demands judgment against the defendants, and each of them, for compensatory and punitive damages; the costs and disbursements of this action; a trial by jury; and for such other, further and general relief as the Court deems just and proper.

                              WADE H. BENNETT

                              By Counsel

Marvin W. Masters
Laurie Garrigan McKowen
Masters & Taylor, L.C.
Fourth Floor - Peoples Building
179 Summers Street
Charleston, West Virginia   25301
Counsel for Plaintiff
H:\3\211\P01

13



IN THE CIRCUIT COURT OF GREENBRIER COUNTY, WEST VIRGINIA

WADE H. BENNETT,

            Plaintiff,

v.                                    Civil Action No. 96-C-43
                                    (Honorable Frank E. Jolliffe)

CSX TRANSPORTATION, INC., a Virginia
corporation; CSX HOTELS, INC., d/b/a
THE GREENBRIER HOTEL, a West Virginia
corporation; THE GREENBRIER; CRAIG
PHILLIPS, individually and as Director
of Human Resources; ERIC S. KORSH, M.D.;
LEWIS-GALE CLINIC, INC., a Virginia
corporation; REHABWORLD OF WEST VIRGINIA,
INC., a West Virginia corporation;
SOFAMOR/DANEK GROUP, INC., an Indiana
corporation; and DANEK MEDICAL, INC.,
a Tennessee corporation,

            Defendants.

<u>AMENDED COMPLAINT</u>

Plaintiff, for his amended complaint, complains and says as follows:

1.     Plaintiff is a resident of Greenbrier County, West Virginia and was an employee of The Greenbrier Hotel, owned by CSX Hotels, Inc., a West Virginia corporation, and/or CSX Transportation, Inc., a Virginia corporation, hereinafter collectively referred to as CSX.

2.     In 1993, plaintiff incurred an injury at work at CSX which required medical care and treatment.

3.      Lewis-Gale Clinic, Inc. and Dr. Eric S. Korsh advertised in the State of West Virginia during this period of time for patients who had problems or injuries like those of plaintiff for the purpose of attracting patients, including plaintiff, to seek treatment from Lewis-Gale, including Dr. Eric S. Korsh, an orthopaedic surgeon, and otherwise the Clinic and Dr. Korsh had significant contacts with the State of West Virginia.

4.      RehabWorld of West Virginia, Inc. is a West Virginia corporation which provides therapy to persons who have injuries like plaintiff. Craig Phillips and Lewis-Gale Clinic referred plaintiff to RehabWorld for therapy and/or work hardening.

5.      Sofamor/Danek Group, Inc., an Indiana Corporation, and its wholly-owned subsidiary, Danek Medical, Inc., a Tennessee Corporation (hereinafter collectively "Sofamor/Danek"), are manufacturers and distributors of medical devices for the purpose and application of orthopaedic surgeons to utilize in orthopaedic surgery.

6.      Craig Phillips is the director of human resources for CSX/Greenbrier and was involved in the management of plaintiff's employment at The Greenbrier, including workers compensation defense and other matters.

7.      Craig Phillips, at all times complained of herein, was an agent, servant and employee of CSX and was acting on his own behalf and on behalf of CSX.

8.      On or about March, 1994, plaintiff was operated on at Lewis-Gale Clinic and certain pedicle screws and rods, manufactured by Sofamor/Danek, were placed into your plaintiff's back, vertebrae and spine by Dr. Korsh. Dr. Korsh, at all times

complained of herein, we acting as agent, servant and employee of Lewis-Gale Clinic.

9.     The aforesaid procedure was recommended by Lewis-Gale Clinic acting by and through its agents, servants and employees, including Dr. Eric S. Korsh, said recommendation including a representation that they were 98% successful.

10.     Dr. Korsh and Lewis-Gale Clinic were distributors of the aforesaid pedicle screws and rods for and on behalf of Sofamor/Danek and were acting in that regard as agents, servants and employees of Sofamor/Danek.   This Court has venue and jurisdiction over these defendants as they all transact business in this county and in this state.

### Count I

11.     Defendants sold their pedicle screws and rods and placed them into the stream of commerce in an unreasonably dangerous and defective condition and were purchased by the plaintiff without any change to the product.

12.     The defendants, Dr. Korsh, Lewis-Gale Clinic and Sofamor/Danek, acting for and on behalf of each other, as agents, servants and employees, and each one of them, were negligent in the following particulars:

a.     In manufacturing and marketing a defective and unreasonably dangerous product;

b.     In manufacturing and marketing a product improperly designed;

c.     In manufacturing and marketing a product without adequate testing or inspections;

3

d.    In manufacturing and marketing a product without adequate warnings of risks and hazards associated with use thereof;

e.    In manufacturing and marketing pedicle screws and rods which were not fit for the use intended; and

f.    In failing to exercise that degree of care and prudence that a reasonable manufacturer and distributor would exercise under the same or similar circumstances.

13.    The acts and conduct of defendants were intentionally and knowingly done and plaintiff was damaged as hereinafter alleged.

14.    As a direct and proximate result of one or more of the foregoing acts or omissions, the plaintiff suffered injuries and damages and will continue to suffer injury and damages herein alleged for which he is entitled to recover damages.

Count II

15.    Plaintiff hereby adopts and incorporates paragraphs 1 though 14 as if fully stated and set forth at length herein.

16.    Defendants sold and distributed their pedicle screws and rods and placed them into the stream of commerce in an unreasonably dangerous and defective condition which products were not reasonably safe for their intended use and such products were purchased by the plaintiff without any change to the products.

17.    Defendant Doctor and Clinic transferred the pedicle screws and rods, which were standardized, commercially manufactured products, which were inherently defective for their intended use, to plaintiff while providing professional services.

18.    The above referenced screws and rods were expected to and did in fact reach the plaintiff without substantial change in the condition, in which they were marketed and sold, and used in the fashion which the defendant manufacturer, Sofamor/Danek, and Clinic and Doctor intended them to be used.

19.    Due to the defective condition of the product, which was not reasonably safe for its intended use, plaintiff has suffered injuries and damages herein alleged and will continue to suffer injuries and damages for which he is entitled to recover damages.

Count III

20.    Plaintiff hereby adopts and incorporates paragraphs 1 through 19 as if fully stated and set forth at length herein.

21.    The defendants were/are merchants with respect to the sale and manufacture of the pedicle screws and rods.

22.    The defendant Doctor and Clinic provided professional services involving transfer of the pedicle screws and rods to the plaintiff as a part of such service.  The rods and screws were standardized, commercially manufactured products which were inherently defective and not reasonably safe for their intended use.

23.    In selling the pedicle screws and rods in question to the plaintiff, the defendants expressly and impliedly warranted to the plaintiff that the pedicle screws and rods manufactured, distributed, supplied, sold and/or delivered were merchantable, reasonably safe and fit for the ordinary purposes for which they were sold and intended.

24.     As a direct and proximate result of the unreasonably dangerous and defective condition of the pedicle screws and rods, the defendants have breached expressed and implied warranties of merchantability and fitness pursuant to West Virginia Code Sections 46-2-106, 46-2-313, 46-2-314 and 46-2-315.

25.     As a result of the breach of warranties, the plaintiff suffered and will continue to suffer severe, grievous and personal injury for which he is entitled to recover damages.

<u>Count IV</u>

26.     Plaintiff hereby adopts and incorporates paragraphs 1 through 25 as if fully stated and set forth at length herein.

27.     The defendants have fraudulently misrepresented the quality of the products in placing them upon the market. The representations of the safety of the products were made with reckless disregard of the truth of the safe condition of the products which was either known or should have been known by the defendants. The representations were intended to be relied upon by the plaintiff and others and were in fact relied upon by the plaintiff and others to their detriment and damage. As a result the plaintiff is entitled to both actual and punitive damages for the conduct of the defendants.

28.     These misrepresentations included that they were 98% successful, when that is not true.

## Count V

29.    Plaintiff hereby adopts and incorporates paragraphs 1 through 28 as if fully stated and set forth at length herein.

30.    Defendant Clinic is vicariously liable for the acts or omissions of defendant Doctor in that Clinic billed the plaintiff for services provided to plaintiff and profited from such arrangement between Doctor and Clinic and therefore should be held responsible for the damages and injuries to plaintiff by joint venture and agency.

31.    The aforesaid defendants, Clinic and Doctor, were engaged in a joint venture.

## Count VI

32.    Plaintiff hereby adopts and incorporates paragraphs 1 through 31 as if fully stated and set forth at length herein.

33.    The defendants knew or should have known of the defective condition of the product and failed to warn your plaintiff that the pedicle screws and rods would break, deteriorate or otherwise cause serious injury upon being used in the manner and method as aforesaid; and as a proximate result, your plaintiff was injured and damaged as hereinafter alleged.

34.    That as a proximate result of the negligent, careless, intentional and wrongful acts and omissions of the defendants and each of them acting for and on behalf of themselves and each other as aforesaid, your plaintiff was caused to suffer great and permanent injury to his body, he was made sick, sore, lame, crippled and was caused to suffer great and permanent physical pain and suffering and mental anguish

and will continue to suffer the same for the rest of his natural life; and as a result thereof, he is permanently injured, disabled and crippled for life and, in addition, your plaintiff was damaged as follows:

a.    He incurred hospital and medical bills;

b.    He will incur future medical bills;

c.    He has lost past and future wages; and

d.    He has lost ability to enjoy life.

And your plaintiff has been otherwise damaged.

35.    The defendants knew the pedicle screws and rods were not properly designed and manufactured and that they had not been sufficiently or adequately tested when they sold them to your plaintiff, and they knew they were dangerous.

36.    The defendants knew when they sold plaintiff the pedicle screws and rods that they would break, deteriorate or cause plaintiff additional damage, but they never warned him, and defendants intentionally injured your plaintiff or were so reckless that said recklessness manifested an intention to harm plaintiff, and plaintiff is entitled to punitive damages.

<u>Count VII</u>

37.    Plaintiff hereby adopts and incorporates paragraphs 1 through 36 as if fully stated and set forth at length herein.

38.    On or about March, 1994, the defendant, Dr. Korsh, while acting individually and as an agent, servant, employee and/or apparent agent of the defendant Clinic and the Clinic acting in its own behalf, and RehabWorld, had a duty to

render care in accordance with the prevailing professional standard, and further deviated from the prevailing professional standard of care customarily employed by members of his profession and specialty that they:

    a.    Failed to order and/or carry out certain diagnostic tests and procedures which they knew or should have known were indicated for the immediate diagnosis, care and treatment of plaintiff;

    b.    Failed to adequately and properly diagnose the plaintiff's condition and to order or perform the correct procedure on plaintiff, but instead ordered and performed an incorrect procedure, as described aforesaid, to wit: surgical placement of the aforesaid pedicle screws and rods;

    c.    Failed to warn plaintiff of the dangers or risks of the operation and procedure; and

    d.    Required plaintiff to perform activities which caused plaintiff further injury.

    39.    As the direct and proximate result of the aforementioned deviations from the prevailing professional standard of care by the defendants, Korsh, Clinic and RehabWorld, and the acts and conduct of Sofamor/Danek, the plaintiff has sustained permanent damage and suffered serious and permanent injuries, and as a result of the above deviations, has been rendered sick, sore and disabled and has in the past suffered and will in the future suffer great pain and anguish of body and mind, all of which are permanent in nature.

40.     As the direct and proximate result of the above deviations from the accepted standards of care, the plaintiff has in the past and will in the future incur medical bills attendant to his condition.

41.     That as the direct and proximate result of the above deviations from the accepted standards of care, the plaintiff has in the past and will in the future suffer loss of earnings and earning capacity and has been damaged as hereinafter alleged.

<u>Count VIII</u>

42.     Plaintiff hereby adopts and incorporates paragraphs 1 through 41 as if fully stated and set forth at length herein.

43.     As a result of the injuries proximately caused by defendants above, plaintiff was unable to continue to perform all of his usual duties at work.

44.     Defendant Korsh, acting as agent, servant and employee of the Clinic, maliciously, intentionally and wantonly wrote a letter to defendants Phillips and CSX and stated and/or implied that plaintiff was a malingerer.

45.     The defendants CSX and Craig Phillips fired your plaintiff after receiving the aforesaid letter.

46.     The defendants, Korsh and Clinic, intentionally, maliciously and negligently interfered with your plaintiff's employment and as a proximate result, your plaintiff was terminated and was damaged as hereinafter alleged.

<u>Count IX</u>

47.     Plaintiff hereby adopts and incorporates paragraphs 1 through 46 as if fully stated and set forth at length herein.

48.     The defendants Korsh and Clinic libeled and slandered your plaintiff and plaintiff was damaged as hereinafter alleged.

<u>Count X</u>

49.     Plaintiff hereby adopts and incorporates paragraphs 1 through 48 as if fully stated and set forth at length herein.

50.     The defendant, Craig Phillips, acting individually and as agent, servant and employee of defendant CSX, intentionally, willfully and maliciously, acting in concert with defendants, Korsh and Clinic, combined and conspired to terminate your plaintiff for reasons which included that plaintiff had filed for and was prosecuting a workers compensation case for benefits thereunder.

51.     As a proximate result, your plaintiff was damaged as hereinafter alleged.

<u>Count XI</u>

52.     Plaintiff hereby adopts and incorporates paragraphs 1 through 51 as if fully stated and set forth at length herein.

53.     The defendants Craig Phillips, CSX, Korsh and Clinic combined and conspired to fire plaintiff for reasons against public policy, including that he had complained about the pedicle screws and rods and that he was prosecuting a workers compensation complaint.

54.     As a proximate result, your plaintiff was damaged as hereinafter alleged.

<u>Count XII</u>

55.     Plaintiff hereby adopts and incorporates paragraphs 1 through 54 as if fully stated and set forth at length herein.

56.   The acts and conduct of defendants were outrageous in that they offend against the generally accepted standards of decency and morality in the community.

57.   The plaintiff suffered severe emotional distress as a proximate result thereof.

58.   Plaintiff was otherwise damaged as hereinafter alleged.

<u>Count XIII</u>

59.   Plaintiff hereby adopts and incorporates paragraphs 1 through 58 as if fully stated and set forth at length herein.

60.   Defendants' acts and conduct were fraudulent in the following respects:

a.   Defendants, Danek, Korsh and the Clinic, acting for and on their own behalf and as agents, servants and employees, one of the other, and as joint venturers and conspirators, intentionally and knowingly set about to and did misrepresent that pedicle screw fixation devices like the one inserted in plaintiff's back were beneficial in surgeries like the one which Mr. Bennett had, and further encouraged doctors to leave the implant in the patients' backs when Danek, Korsh and the Clinic knew that doing so would cause patients harm, and combined and conspired with doctors, including Dr. Korsh, to misinform patients, including your plaintiff, about the necessity of removing the implants promptly after the surgery.  As a proximate result of said fraudulent conduct, your plaintiff agreed to have an operation with the implants and went for over a year without having them removed and was injured as herein alleged.

b.   Defendants, Danek, Korsh and the Clinic, acting on their own behalf and as agents, servants and employees one of the other or as conspirators and joint

venturers, guaranteed 98% to plaintiff and 97% to plaintiff's employer that the product would result in good result and that plaintiff would be back to work at his former work when said defendants knew that they could not truthfully make any such promises and warranties. As a proximate result of said fraudulent conduct, your plaintiff had an implant placed in his back and he was injured thereby and his employer believed that he was abusing the Workers' Compensation Commission and was malingering.

c.      Defendants, Korsh and the Clinic, acting for and on behalf of themselves and as agent, servant and employee, one of the other, and as joint venturers and conspirators, misrepresented facts to plaintiff's employer concerning plaintiff's condition, his motivation to work, his truthfulness and his willingness to work by telling his employer that he was a malingerer when they knew or had reason to know he was not a malingerer. As a proximate result, your plaintiff was injured and damaged as herein alleged, including being humiliated, embarrassed, emotionally distressed, was fired from his employment, and his employment reputation was permanently damaged.

d.      Defendant, Hotel, engaged in conversations and communications with Dr. Korsh and the Clinic in which they obtained a false and fraudulent letter from Dr. Korsh and the Clinic in order to fire plaintiff, and did, based upon said letter, fire him for reasons against public policy. As a proximate result, your plaintiff was damaged as aforesaid.

61.      Defendant, Hotel, made false and fraudulent statements against plaintiff, including that he was "faking an injury" and "making all attempts to abuse the

system," and further made false and fraudulent statements to the Workers' Compensation Commission, including that he had never complained of his neck injury.

62.    The defendants, Hotel, Korsh and the Clinic, combined and conspired to document a false statement in plaintiff's personnel file which was defamatory for the purpose of defaming him.

63.    The defendants, Hotel, Korsh and the Clinic, had unlawful communication concerning plaintiff's medical condition and motive which intentionally violated plaintiff's doctor-patient privilege.

64.    The defendants, Clinic and Korsh, obtained the consent for surgery by misrepresenting the risks and benefits of surgery.

65.    All of the above acts and conduct amounted to fraudulent acts and omissions and proximately caused plaintiff to be damaged as herein alleged.

## Damages

66.    Plaintiff hereby adopts and incorporates paragraphs 1 through 65 as if fully stated and set forth at length herein.

67.    As a proximate result of the acts and conduct of defendants, acting on their own behalf and collectively as herein alleged, your plaintiff has been damaged as follows:

a.    He has incurred and will in the future incur physical and mental pain and suffering, anguish, anxiety and severe emotional distress;

b.    He has lost income and will lose income in the future;

14

c.      His personal and employment reputation has been damaged;

d.      He has been humiliated and embarrassed;

e.      He has incurred medical bills and will incur medical bills in the future; and

f.      He has lost ability to enjoy life.

68.    The acts and conduct of defendants were intentional, reckless, willful and wanton or otherwise such that entitle plaintiff to punitive damages.

WHEREFORE, plaintiff demands judgment against the defendants, and each of them, for compensatory and punitive damages; the costs and disbursements of this action; a trial by jury; and for such other, further and general relief as the Court deems just and proper.

WADE H. BENNETT

By Counsel

Marvin W. Masters
West Virginia Bar No. 2359
Masters & Taylor, L.C.
181 Summers Street
Charleston, West Virginia  25301
*Counsel for Plaintiff*
f:\3\211\p05.doc

IN THE CIRCUIT COURT OF GREENBRIER COUNTY, WEST VIRGINIA

WADE H. BENNETT,

                Plaintiff,

v.

CSX TRANSPORTATION, INC., a Virginia
corporation; CSX HOTELS, INC., d/b/a
THE GREENBRIER HOTEL, a West Virginia
corporation; THE GREENBRIER; CRAIG
PHILLIPS, individually and as Director
of Human Resources; ERIC S. KORSH, M.D.;
LEWIS-GALE CLINIC, INC., a Virginia
corporation; REHABWORLD OF WEST VIRGINIA,
INC., a West Virginia corporation;
SOFAMOR/DANEK GROUP, INC., an Indiana
corporation; and DANEK MEDICAL, INC.,
a Tennessee corporation,

                Defendants.

Civil Action No. 96-C-43
(Honorable Frank E. Jolliffe)

## CERTIFICATE OF SERVICE

I, Marvin W. Masters, counsel for plaintiff, do hereby certify that true and exact

copies of the foregoing "Amended Complaint" were served upon:

      Melissa G. Foster
      Huddleston, Bolen, Beatty, Porter & Copen
      611 Third Avenue
      Post Office Box 2185
      Huntington, West Virginia 25722-2185
      *Counsel for CSX Transportation, Inc., CSX Hotels, Inc., The Greenbrier*
      *and Craig Phillips*

      John T. Jessee
      Flippin, Densmore, Morse, Rutherford & Jessee
      300 First Campbell Square
      Post Office Drawer 1200
      Roanoke, Virginia 24001
      *Counsel for Eric L. Korsh, M.D*

Susan A. Waddell
Wooten & Hart
Post Office Box 12247
Roanoke, Virginia  24024-2247
*Counsel for Lewis-Gale Clinic, Inc.*

Richard E. Ford, Jr.
The Ford Law Firm
203 West Randolph Street
Lewisburg, West Virginia  24901
*Counsel for Lewis-Gale Clinic, Inc.*

Debra A. Nelson
Mundy & Adkins
Post Office Box 2986
Huntington, West Virginia  25728
*Counsel for RehabWorld of West Virginia, Inc.*

Diana Everett
Steptoe & Johnson
The PMC Building, Suite 101
417 Grand Park Drive
Post Office Box 628
Parkersburg, West Virginia  26102-0628
*Counsel for Sofamor/Danek Group, Inc. and Danek Medical, Inc.*

in envelopes properly stamped, addressed and deposited in the regular course of the

United States Mail, this 24th day of January, 2000

Marvin W. Masters

\\mt_fs1\data\cdrivefs1\3\211\x9.doc

2



## SUMMONS

IN THE CIRCUIT COURT OF GREENBRIER COUNTY, WEST VIRGINIA

WADE H. BENNETT,

        Plaintiff,

vs.                                                                Civil Action No. 96 C-43

CSX TRANSPORTATION, INC., a Virginia
corporation; CSX HOTELS, INC., d/b/a
THE GREENBRIER HOTEL, a West Virginia
corporation; THE GREENBRIER; CRAIG
PHILLIPS, individually and as Director
of Human Resources; ERIC S. KORSH, M.D.;  . . Eric S. Korsh, M.D.
LEWIS-GALE CLINIC, INC., a Virginia          Secretary of State
corporation; REHABWORLD OF WEST VIRGINIA,    4521 Brambleton Avenue
INC., a West Virginia corporation;           Suite 205
SOFAMOR/DANEK GROUP, INC., an Indiana        Roanoke, VA  24018
corporation; and DANEK MEDICAL, INC.,
a Tennessee corporation,

        Defendants.

To the above-named Defendant:

    IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby Summoned and
required to serve upon <u>Marvin W. Masters and Laurie Garrigan McKowen</u>, plaintiff's
attorneys, whose address is <u>Masters & Taylor, L.C., Fourth Floor - Peoples
Building, 179 Summers Street, Charleston, West Virginia, 25301</u>, an answer
including any related counterclaim you may have to the complaint and discovery
filed against you in the above styled civil action, a true copy of which is
herewith delivered to you.  You are required to serve your answer within <u>30</u> days
after service of this summons upon you, exclusive of the day of service.  If you
fail to do so, judgment by default will be taken against you for the relief
demanded in the complaint and you will be thereafter barred from asserting in
another action any claim you may have which must be asserted by counterclaim in
the above styled civil action.

Dated: _March 8, 1996_

                           _Ronald J. Miller_
                                Clerk of Court

_Bond as required by Statute_
_was posted and approved_

                By _Louvonne J. Arbuckle, Deputy_